Your Honor, I'm Penny Appiah on behalf of Christopher Tortu, who is the appellant in this case. Chris Tortu is entitled to the restatement of the jury verdict, because the district court erroneously substituted its own judgment for that of the unanimous jury. The judge granted judgment as a matter of law, and in doing so, erred in two different ways. First, in entertaining the motion, he should not have entertained the motion as it was procedurally borne. And even if he was entitled to entertain the motion, he misinterpreted the standard in which it should be applied to this such motion. Furthermore... Could I ask you... Sure. It's not what you're talking about, but it's a factual question that's of interest to me. Okay. Certainly. As I recall, the jury denied any award against two of the police officers, granted an award, $175,000, plus a small amount of punitives, $5,000, against the third one, Engle. Is that right so far? That's correct, Your Honor. And as I recall, Engle is the one who Tortu says reached to the back seat of the car and grabbed him by the testicles and squeezed really hard for a long time. Is that right? That's correct. Now, I recall that Tortu had his hands handcuffed when he was on the tarmac. That is correct as well, yes. And since he was face down on the tarmac, according to the evidence, I suppose his hands were cuffed behind him. That's also correct. Is there any further evidence to show whether at the time that jury must have believed that Engle squeezed his testicles, whether Tortu's hands were still cuffed and whether they were cuffed behind him or in front of him? The evidence showed that they were cuffed. I believe the officer testified that they were cuffed behind his back as he was sitting in the vehicle after he was arrested. Do you happen to recall the record reference for that? What I want to know is whether the man's hands were cuffed behind him when Engle squeezed his testicles. Your Honor, I don't have the site for that, but I don't believe it's in the record either way, quite frankly. I don't believe that ever came out in testimony whether it was in front or behind at the trial court level. So, okay, thanks. So what we could do, the jury could have inferred, could the jury have inferred that his hands were cuffed behind him because they'd been cuffed behind him and there was no evidence they were ever uncuffed? Certainly, Your Honor. From the time he was handcuffed, he was actually handcuffed in the terminal and brought through the terminal, through the jetway, and then down the stairs to the tarmac and then brought into the vehicle. So from the time that he was handcuffed originally in the jetway, there was no evidence contrary to that that he was ever uncuffed and then placed back in handcuffs. So there's evidence that he was cuffed with his hands behind him. There's no evidence his cuffs were ever taken off. Right, and I believe now that I think about it, it's probably reasonably, it could be reasonably inferred that when they did handcuff him in the terminal, he was actually placed down on the floor in the terminal and they were trying to fight to get his, because I believe he landed on his hands in the terminal, so they were fighting to grab his hands and put him behind his back. So I believe that the evidence did show that when he was handcuffed in the terminal, they did handcuff him behind his back. I thought they cuffed him on the tarmac. No, Your Honor. They cuffed him in the terminal, and he was handcuffed the entire time. I had mentioned that the court in applying this standard did it erroneously, and the district court did it erroneously in the fact that a judge cannot weigh evidence, cannot make credibility determinations, and should make reasonable inferences to the plaintiff in the case. They must also view the evidence in the light most favorable to the plaintiff, which would be Chris Tortu in this case. Unfortunately, the district court did not do any of that when it went through its analysis for judgment as a matter of law. Several times throughout the order, it makes references to against the clear weight of the evidence or overwhelming evidence. It also goes on to say it completely, if you look at the order, you actually would have no idea besides a little sentence dealing with the damages that we actually had two doctors testify, one through deposition and one through live testimony. The district court completely, not only did it not weigh the evidence in favor of Chris Tortu, it completely ignored that evidence, which frankly was the strongest evidence in our favor. Chris Tortu testified that he was injured, and then we had medical experts that came in unrefuted. The defense never called another medical expert in to say any differently. The jury heard all this, but yet the court doesn't even mention it in their order in granting the judgment as a matter of law. I'm intrigued by your standard that you've laid out here. It's my understanding that a 50A motion in the federal rules is similar to what I call a motion for judgment notwithstanding the verdict. Correct. So at that point the jury's already given the verdict, correct? Yes. Well, then I don't see, I guess I'm trying to figure out what case you're relying on to suggest that we take and apply this in a light most favorable to your client. It seems to me that I'm looking for the sufficiency of evidence for the jury, not trying to take it in a light most favorable to your client. All I'm going to find is is there sufficient evidence in there to support the jury's verdict. And, Your Honor, I agree that it is towards the courts trying to figure out the sufficiency of the evidence, but in doing so I believe it's Johnson v. Paradise Valley. I mean, my worry is that if the jury finds a verdict, that at that point we have a verdict, and the only reason that I talk to you about this is I've had these motions before on the district bench, and now I'm looking to find if there's any sufficient evidence to support the jury's verdict, which is better than taking the evidence in your favor. It is saying is there any evidence in the record which would support what the jury's done that I would term as sufficient or substantial evidence. But, Your Honor, the court did ñ oh, excuse me. Is that the way you see it? I think the district court definitely ñ that's the question before the district court, is the evidence sufficient? But when the district court did its analysis, it didn't take into account all the evidence. It ignored the medical evidence. Well, at that point it has to take into consideration all evidence that the jury had, and it's got to be sufficient evidence. Now, there really are two issues, are there not, in this particular case. One is we've got to find there's a constitutional violation, which the court let the jury decide. Correct. Then at that point, the court, based on what it said in the jury conference, I guess, said, okay, I'm going to also consider a motion for judgment notwithstanding the verdict on the added, which we call qualified immunity, which is the second part of a qualified immunity test, but we call it that. And that he was going to do, really, without seeing what the jury did. Correct? I believe he would have, yes. Now, I guess my biggest question then for you is, in that determination, may the district court make its own determination as to facts? No. Why? Because if there are disputed facts, it must rely on the disputed facts as the jury resolved them. What case says that? I believe it's Acosta v. San Francisco. It's discussed in Acosta. Because if the district court is now making those determinations, he's making another determination of fact, is he not? Well, the ---- The fact of whether it really has done more than what Supreme Court precedent would suggest it should be for our precedent in this case. We almost had to rely, quite frankly, on the jury's verdict that this actually happened, because from the beginning and the inception of this case, the defendant's position wasn't that it was a mistake. It was that it never happened. Well, my worry is this, and I think that's the reason for my question. It seems to me that on a motion for judgment notwithstanding the verdict, the court said, hey, based on what the jury did, their jury verdict is totally inconsistent. I can't rely on anything they said. So I'm going to make my own determination of the facts, and based on my own determination of the facts, I'm here declaring there's qualified immunity. So if the standard of review is violated, that's one thing. But if the court has a right to make those determination of facts, as the motion for judgment notwithstanding the verdict, making the second determination, then it may stand. But I don't believe you would even get to qualified immunity, because if the judge disregarded what the jury said, then basically they would have believed the defendants, and the defendant's position was it just didn't happen. I mean, there was never any evidence. Their position was this wasn't a mistake. This position was it didn't happen. And, in fact, one of the defendants, Dwayne Cowley, who is one of the officers that was a defendant, testified on the stand that based on the amount of the one undisputed fact, quite frankly, was that if, in fact, the jury believed that this, in fact, occurred, it was unreasonable. Defense counsel even said on the record, if they come back, if they believe the plaintiff, they believe Chris Tortu that this happened, we should lose. Okay. Let me ask you a second point, then, changing. Motion for new trial now. That's an abuse of discretion, is it not? It is. So, in that particular situation, was it all of the defendants who were going to get a new trial? No, I believe it was just specifically to Eugene Cowley. That's how he, when he granted a conditional new trial, he granted it as to just Eugene Cowley. Wait a minute. Eugene, I'm sorry, Eugene Engle, I apologize. I thought it was Engle. I thought it was Engle. Which one is it? It is. It's Eugene. This really matters to me. Are you sure? I'm positive. Well, I ask you that question because I'm not sure. I read the district court's record. It seems to me that he granted a new trial as to all. My reading of it is that it was just to Eugene Engle as to the sufficient, because there wasn't sufficient evidence or the verdict went against the clear weight of the evidence. Why don't we look? This really matters. Let's see. I think it will be ER 26 or 7, something like that. Actually, it's before that. It starts on 26. 26, he says, the court conditionally finds that Engle is entitled to a new trial because the jury reached an unreasonable verdict. He is protected by the doctrine of qualified immunity, and the damages award was speculative and excessive and against the clear weight of the evidence. Right. Is that the only thing that's before us? Not the other two officers? No. Correct, Your Honor. This is it. Eugene Engle is solely the only issue. As I understand it, you won the case against Engle. You lost the case against the other two officers. We did. And you have not appealed your defeats. No. Very good, because there is, on the first page of his order, it talks about the defendant's motion is not just limited to Engle. So I wanted to make sure. Thank you. You've answered my question. So you're not appealing your defeats in front of the jury on the other two officers? No, Your Honor. No. Quite frankly, the evidence was extremely strong against Eugene Engle. I think the jury came back with a reasonable verdict as to Eugene Engle. Cashton and Cowley, there was a lot going on at one time, and I believe a reasonable jury could have looked at that and maybe said, you know what, I don't know if Tortu could specifically say who did what to me at what point. It was a pressure situation. Nobody expects to be in that situation. Help me on something else that confuses me here. Okay. We use a lot of words for short in the law, and qualified immunity is a phrase that we use for short. It means qualified immunity from trial, from having to be tried in a case. That's the Supreme Court decisions. That's what they say, and that's why the government gets an interlocutory appeal in qualified immunity cases. I don't understand what standard to use when a judge looks at the evidence independently after trial to decide whether somebody has qualified immunity from going to trial. I'm confused about how to do it. I had to look it up myself, and I believe that's why Acosta v. San Francisco does say that if there is facts in dispute, the judge needs to rely on what the jury decided as to those disputed facts. I can understand a judge saying, well, now it's gone to trial, and as a matter of law, there's no constitutional violation, so I'm granting judgment as a matter of law in favor of the policeman, because even though he did all these things the plaintiff said and the jury believed, that doesn't violate the Constitution. But that's not qualified immunity anymore, I don't think, is it? It's not qualified immunity after the judge... It's not qualified immunity from going to trial because he went to trial. Well, that's what's a little bit confusing if you look at the, to me, in the order, is when he, one of his conditions for granting the new trial, conditionally, is this qualified immunity. Well, if you grant a new trial and we go back down there and the judge has already decided that this officer is entitled to qualified immunity, it's a little bit confusing to me. I get it. You know, if we're short of questions, this is a case where my guess is you're going to want some rebuttal time. You're right. Thank you. Counsel? Good morning, Your Honor. May it please the Court. Tom Buehler on behalf of Defendant and Appellee Eugene Engel. There was extensive briefings on this case. Let me tell you what is bothering me so you can address it. Yes, Your Honor. I read the judge's decision and he says a few things that I have difficulty understanding. For one thing, he says it's just irrational and he can't understand why the jury would distinguish Engel from the other two policemen. And when I read the excerpts, I thought, well, it's easy. A big guy is in a fight with the cops. It's a Malay. He's somewhat drunk. He doesn't know who's doing what to him. And they have the right to do what it takes to subdue him in the airport. So no verdict against those two policemen. They didn't violate his constitutional rights. But then as to Engel, man sitting in the police car, he's subdued, he's arrested, the incident is over, he's got his hands cuffed behind him, and the cop reaches to the back of the car and squeezes his testicles so hard that three weeks later the doctor says, wow, look at those testicles. It seems easy for the jury to distinguish between Engel and the other two. Have I got the facts wrong here? I think I can, in part, yes, Your Honor. The difficulty is, however, is, and I think both the questions to able counsel identified it, is how to deal with a qualified immunity issue at this stage of litigation. Having said that, because that's really the big question, and I think it's somewhat an issue of first impression for this court. But in terms of the facts, I don't, it's not, from the court's order and from the evidence submitted at trial, it's not that segmented in terms of what happened. Okay, why don't we sort a couple of details of the facts out. Yes, Your Honor. Is there evidence to show or evidence from which the jury could infer whether Engel's hands were cuffed behind him in the police car or not? Mr. Tortue's hands. Yeah. Your Honor, the evidence suggested that he was cuffed inside the terminal, behind his back, and was not uncuffed up until the time that he was taken to the substation. So the jury could infer that he was sitting in the back of the police car with his hands cuffed behind him. I think they can, Your Honor. Now, he testified, as I recall, that Engel is the one who reached back and squeezed his testicles, right? Well, I would disagree with that on this level. Okay, tell me where to find where the jury could not infer that it was Engel. Well, there was testimony on direct examination by the plaintiff. You retried the case to us. So I assume what, am I wrong in assuming that what we have to do is to see whether the jury had a substantial basis in the evidence for thinking it was Engel? Well, the issue on qualified immunity, Your Honor, is to examine what the trier of fact established. In this case, we have no specifics. Why does qualified immunity even come into it? It's not qualified immunity from going to trial. He went to trial. There was no interlocutory appeal when the judge refused to grant qualified immunity before the trial. It seems like that's all over. And the only question is whether the three policemen violated Tortu's constitutional rights by unreasonable force. And the answer from the jury is two didn't, one did. I would respectfully disagree with that, Your Honor. In terms of the law, qualified immunity should be determined as soon as it's possible in the litigation. That's what the Supreme Court has established, well established, in Hunter and Saussure and others. If there's a factual dispute, however, the court is right that if the qualified immunity issue has three levels. The first is, you know, what happened. And based on what happened, could the officers objectively, reasonably believe that their conduct was not in violation of the Constitution based on well-established law, the first being questions of fact, the second being questions of law. There is no interlocutory right for an appeal if the summary judgment or any other judgment as a matter of law motion is denied based on the first. That is, well, we need to find out what happened. And until we find out what happened, I can't make those legal determinations. I'm speaking in the first person of the trial judge. And that's indeed what happened here. Are you saying that there would be qualified immunity for squeezing a man's testicles really hard for a long time after he was handcuffed in the back of the police car? I think there can be, dependent upon the circumstances of what occurred and what was going on. What circumstance was there to show that he was doing anything in the police car that would justify squeezing his testicles that way? Well, this begs the question, which I'd like to address at some point, in terms of whether there's evidence of that that we can consider. Assuming that to be true. But the honest truth is, to answer my colleague's question, because all you're going to tell us is on direct exam he said one thing and when you cross-exam in other places he said something else. But that doesn't add about the sufficiency of the evidence. So my colleague's question is pretty important to me, too. That's why I want to hear your answer. I mean, what constitutional, what case could I look at to suggest that squeezing somebody is going to be an objectively reasonable thing to do? Let me address Judge Kleinfelder's question then. Your Honor, the evidence that was established and found by the jury and as relied upon by the judge is everything that led up to that event. It was that two officers were battered by this particular angel. One of them suffered a debilitating and serious injury. That in transport of this individual he was continually combative and injuring officers. That when he was placed in the patrol car, they still needed to transport him to another position, another location within the airport. And what the trial court concluded, that there was no well-established law to suggest that in light of these circumstances and to quell any further outbursts that will further officers. I don't understand. You're saying once he's subdued in the car it's okay for a policeman to squeeze his testicles just to make sure he doesn't get any ideas in his head about making trouble again? Well, I don't think that the evidence established that he was subdued, but the trial court did find that. He's cuffed and he's in the back of a police car, right? He's cuffed in the back of a police car. As I remember, the way those cars work is you can't get out of them unless the policeman lets you out. Well, Your Honor, this particular vehicle that was involved was a sports utility vehicle. It wasn't one where he was sealed in the back seat like once. There were officers inside of it too? Correct. There were officers on either side of it. We've got a cuffed man with two officers on each side of him. Is it now necessary for the third officer to reach in and squeeze his testicles? Well, Your Honor, necessary is not the prudent question. The question is whether it was apparent at that particular juncture, given what occurred, that it would be obviously unconstitutional to do that. And it's the plaintiff that bears the burden under qualified immunity analysis. Why wouldn't it be? It looks like it's just torture to punish them for making trouble in a terminal. Well, in this case, what the court found, and which I think was appropriate, Your Honor, was that it was a pain compliance technique to instill and make sure that . . . That's what the judge says. I think what the judge says is it never happened. For one thing, the plaintiff was a liar in the judge's opinion because all the other witnesses, the other police contradicted him. And for another thing, the judge said it would have been physically impossible because Engle's arms are too short. Correct. But on the other hand, you have Tortu saying Engle did indeed do it, and then you have the doctor saying there's this big hematoma in his scrotum three weeks later. So you have the judge saying couldn't have happened, didn't happen. You don't have him saying they needed to do it in order to keep the guy under control. If he had said they needed to do it to keep the guy under control, that would support your argument. But I don't see it in the . . . I'm looking at page 13 of the . . . Your Honor . . . And I don't see it. I would refer, Your Honor, to page 19 of the order, beginning at line 10. Okay. The court bit well and did find those issues which Your Honor has already identified. The secondary issue . . . Where's the fact there? It looks to me like that's just his conclusion. Beginning at line 10, I think that's the assertion, Officer Engle is protected by qualifying immunity because any mistake of fact that he made was reasonable given the circumstances of the plaintiff's arrest. As detailed above in the previous section, the plaintiff provided continuous violent resistance to defendants' attempts to arrest him. He punched and head-butted one officer and caused severe shoulder and arm injuries to another. The plaintiff violently resisted arrest in the terminal, then calmed down as the officers escorted him to the jetway. Then he erupted with violence again in the jetway. After the officers again gained control over him, they escorted the plaintiff down the stairs. At that time, the plaintiff again tried to resist by wedging his feet between the stairs so the officers could not escort him to the bottom. I'm talking about the stuff that Tortu lost on in front of the jury. It's the squeezing the testicles in the car that he won on, and it would be helpful if you'd focus on it. Well, Your Honor, I was addressing the question concerning wherein lies the district court's order that qualified immunity still applies, even accepting that version of facts as gospel truth. How about down at the police station? He might have still been making a nuisance of himself. Could they grab him by the testicles, squeeze as hard as they could at the police station? Well, Your Honor, I cannot give youówe're not here to litigate that case. The qualified immunity analysisó What's the difference between that case and this one? Well, the difference is, in this case, these particular officers, who at least one was already out of commission, could not do a thing, still had to transport him to the airport and later to the jail. One of them was injured, which he couldn't do anything. Officer Engel, as well, was injured, as was Officer Cowley to the face. Well, I think Engel's injuries were he hurt his knuckles beating Tortue up. Well, Your Honor, even Tortueó And what the record showed is that the injuries were cuts and bruises on his knuckles? Well, what Mr. Tortue said was that the officer said, look, you've injured my hand, and then struck him with the injured hand. And then I think there are pictures of the injuries to his hand, right? And we supplied those pictures of the injuries to the two officers, as well as pictures of Mr. Tortue in the screening area. The question that was asked was, what about qualified immunity? Is it just something that can only be asserted at the summary judgment stage and after that effect goes away? And that's not the law, Your Honor. But I want to talk about that just a minute, because, okay, we have a qualified immunity, and we have two distinct different things or elements that we have to get. One is, was there a constitutional violation? That's the first. The second is, should the officer have reasonably known that? That's the second. The constitutional violation is the one the judge gave to the jury. And the jury said, as to Officer Engel, it is. At that point, we have a motion. And the motion for judgment now is standing the verdict, giving every benefit of the sufficiency of the evidence to the jury verdict. First of all, I don't believe you filed any motion to go to the first element. I know you've argued about that, but I don't think you did. But the second element, even if we say the judge's idea as in the jury conference is that you can file your motion for judgment now withstanding the verdict, what is the standard for the judge? That's important, because if the judge has to give every, the sufficiency of the evidence to the jury, then he's got to look at what the jury could have found, which was different than what they found on the other officers, and then suggest that it is not something an officer really would have known or reasonably could have known was above. Now, in my reading of the judge's opinion, it talked a lot more about what he wanted the evidence to say than what the jury should have thought the evidence should say. In fact, he dismisses the jury evidence, and therefore it's hard to suggest that he could have made that decision based on what he put in the record. Talk to me about that. Your Honor, the first issue I think from a legal standpoint is how is it to be done? And if I'm not catching your question, please correct me. And this is the issue that I think is a matter of first impression to a certain degree with this particular circuit. There are circuits out there that give a jury instruction to the jury. Once there is, if they find excessive force, in this case using excessive force example, is that excessive force so unreasonable that no objective person could find it not so? We submitted jury instructions to the court. The court opted not to do that. Other circuits say, in order to determine the qualified immunity analysis, there needs to be special interrogatories submitted to the jury. And that based on those special interrogatories, in this case, I think you'd have to submit 200 of them, because he claimed he was hit or struck in some fashion 200 times, identifying all the facts, which is the providence ordinarily for the trier fact, and then the court, based on those answers to those interrogatories, make the qualified immunity decisions. Was the law quick? We call it qualified immunity, but it makes the second-pronged decision of the qualified immunity analysis. Yes. That's what you're really talking about. Was the law well established, and would a reasonable officer in that particular position, with those facts, believe it was objectively unreasonable to do whatever was alleged? I have no problem with your argument that the judge should decide that. However, on the facts, such as the judge deciding that it's impossible that Engle did this and that the plaintiff's account that Engle did is contradicted by the other officers and should not be believed, I ultimately have a problem with the Seventh Amendment to the Constitution. One of the big differences between our system and England's is the Seventh Amendment. And the Supreme Court said in Unitherm Food Services, where they said that the requirement for renewal of a Rule 50 motion is really strict, they said ultimately there are Seventh Amendment concerns behind that. Tortu is entitled, just as the officers were, to have a jury decide what happened, and they did. And it looks to me as though the judge is really not making his decision here on the basis of law. He's making it on the basis of fact, that he doesn't believe Tortu. He thinks it's physically impossible because of Engle's short arms for Engle to have done what Tortu said he did. He doesn't think, he also doesn't think Engle's testicles were squeezed, because he doesn't see why he couldn't protect his testicles. It seems like the Seventh Amendment would bar that if we interpreted Rule 50 and qualified immunity as liberally to the police officers as you advocate. I don't believe that's the case, Your Honor. Why not? Well, both Rule 50 and Rule 59 have efficacy and are important, notwithstanding the right to a jury trial under the Seventh Amendment. They're not in violation of due process for either side to have those. They serve it. You make all these motions, and then the lawyer who dropped the ball on some piece of evidence can ask for leave to put more evidence in, so the jury gets the whole picture. The issue with the difficulty is the intertwinement here of qualified immunity and legal liability. Absolutely, there's no question, Your Honor, I would submit to you, well-established law makes clear that the qualified immunity defense goes past the trial. It's not forfeited if there's genuine issues, material fact, or sufficient evidence under Rule 50. It's not forfeited. The court still needs to make that decision. Well, I think what you're pointing out is the application of Rule 50, which makes it very clear that you have to make a motion for a direct verdict before you can do anything afterward, either for a judgment as a matter of law or for a new trial. You have to make that first motion, do you not? Under 8. Ordinarily correct, Your Honor. That's what the rule states. In this particular case, the defendants at this time maintained the defense of qualified immunity from stem to sturm in this litigation. At the pleading stage, at the summary judgment stage, with the joint pretrial order, with the trial brief, at jury instructions, and at verdict form. Except for the fact they made no motion for a direct verdict. Well, Your Honor, the decision, the informed decision of the court was, look, that's not ripe at this time. That's what the court told the defense and told the defense counsel. I think you have to make that motion. Rule 50 says that pretty clearly. Well, what it indicates is there need be notice, and like Judge Kleinfeld indicated, that if there's an evidentiary issue that can be cured, the other side should have that opportunity. But that just wasn't the case here. This wasn't an issue of, well, we left some factual issue out. This was the judge, in giving benefit to the jury, looking at this inconsistent verdict and finding how in the world can they, with this concerted effort, find two that weren't able to do it, and how do you get around this specific language of 52B? It says the court does not grant a motion for judgment as a matter of law made under 50A. The court is considered to have made, have submitted the action to the jury, subject to its determination afterward, if either judgment is a matter of law, or as to a new trial. But you've got to do A first. Your Honor, I'd like to address, I see my time's out, unless you'd like... Go ahead and answer the question. Your Honor, the court found, this court found, that this issue had been raised prior to the close of evidence, and instructed counsel at that time to make, this is an issue, he didn't find this to be an issue for him until after a verdict. He declined to give the jury instruction, he declined to give special interrogatories, and after the verdict, in hindsight, and taking that verdict in the best light for that jury, how can a world come to this conclusion? He looked at that evidence, found that it was physically impossible, found that... I know all that, but what I'm concerned with is how you get around to this 50B, which says that you've got to make the 50A motion first, and as I understand it, your argument is that, well, we submitted an instruction. Is that right? And a verdict form with interrogatories. Yeah. And the judge declined to do that, and indicated that this was an issue that you can raise post-trial. And we relied in good faith upon that statement to us, that qualified immunity remains. I mean, what the plaintiffs were arguing here was a pre-saucier worldview. The judge almost went for it, went home, read saucier, and found, yes, qualified immunity raised, I still have to make this determination, but counsel, I'll do it post-verdict. And looked at what the trier of fact did, and based on what the trier of fact did, he made the legal determinations. I had difficulty finding the instructions that you proposed and the interrogatories in the excerpts of record. Are they there? Your Honor, the discussion with the court is in there concerning the issues. The actual documents are not in the excerpts of record. It would seem it would be very difficult for us to rule on the basis of having submitted the instruction of how you wanted it to proceed without it being in the excerpt. I presume it's in the record. I can appreciate that, Your Honor. I can only give you the citations at this stage, what you have in front of you, and where these issues were discussed pre-the case going to the jury. Okay. Well, that would be some help. Do you have that? Yeah. Beginning in two places. Beginning in excerpts of record 437, beginning of excerpts of record 460, and beginning in supplemental excerpts of record 76 on where the court said that defendants were at liberty to argue this point post-trial motions. Okay. I guess the question I have, then, is I suppose the judge is wrong that 50A should have been given. Isn't it the obligation of the attorney to say, look, we have to make this motion if there's going to be consideration afterward? Your Honor, I can only say, as you know, we spent a lot of time detailing the facts in the briefs, and they were lengthy briefs, and I apologize for that, to try to get this point across. The stories that were here were, as the judge says on one point, wildly exaggerated, if not nonexistent altogether concerning what had happened. We respected that at the summary judgment phase, moved for everything else with exception of what we have issues of fact with, and continued to make clear that, judge, we still have qualified immunity. We understand there's issues of fact here. We understand we can't discount as a matter of incredulous, as a matter of law, what was said, everything, but we still have the defense. And he said, I understand that ultimately after reading Saussure, and I'll make the decision at post-trial. Was his only decision afterward based on qualified immunity? I don't think so. No. Well, his issues were looking at the jury's verdict in hindsight, giving them the benefit of the doubt. How could they do what they did? That's what you need a 50-A for. Well, he didn't determine it in terms of insufficiency of evidence. He determined, at least in one part, at least the squeezing episode, that it was physically impossible and logistically impossible to get a 50-A. It was physically impossible to do what was said by the plaintiff when he first... Isn't that insufficiency of evidence to show? Well, we cited cases, Your Honor, that established the physical impossibility rule that, as a matter of law, there are things that are incredulous. Certainly that's not as a matter of law. How long his arms were or how far he could reach, that's not a matter of law. That's factual, isn't it? No, I don't disagree with that, Your Honor. All I'm saying is, I think the court, and this is an evidentiary issue, which I would suggest to you is abuse of discretion standard. When he determined that the physical impossibility rule applied to that squeezing episode, that that was within his province and he did so properly. Did you have other evidence to explain the doctor's observations about the hematoma? Well, Your Honor, I'm way over. I'm going to go on so long as I get your permission. I can answer that question. Was there other evidence to explain that he hurt his testicles in some other way to explain away the doctor's observation of the hematoma? That's objective evidence by the doctor that the man's scrotum was seriously injured. The doctor that testified that was under a misapprehension of when it happened. But setting that aside for a moment, there was evidence that the initial takedown, if you will, of the plaintiff in the terminal after he struck the officers, that the officer that was Officer Cowley hit him below the waist with his shoulder, took him off his power base, decleded him, if you will, for using a football term, and took him to the ground by hitting him below the waist with his shoulder. That's how he got him off the ground, got him off his feet to the ground. There's a lot below the waist besides the scrotum. Did some policeman say, I hit him in the testicles, but it wasn't in the car, it was in the terminal? No, Your Honor. Thank you. I think there was some time reserved for rebuttal on this one. There was a lot discussed, but I'd like to focus on the qualified immunity and if the right was clearly established. The district court does mention Price v. Kramer, which held that squeezing testicles when a pat-down occurs is clearly outside the bounds of qualified immunity. However, it says that's not enough to give Officer Engel notice in this case because it's not the same situation. However, this Court's ruling in Davis v. City of Las Vegas suggests that it's crazy to let officers escape responsibility because there's not a case exactly on point saying that this specific thing happened. If a reasonable officer would know that this was excessive or not within the realms of the law, well, then it's not entitled to qualified immunity. And that's exactly what, furthermore, even though not case law, Metro's own policy, Metro's own use-of-force policy, suggests that there's certain red zones that you cannot go near, and those include the groin and the head. So even if the purpose of saucier is to put... That wouldn't be a constitutional basis. It wouldn't, Your Honor. I'm just putting... The purpose of saucier is to protect an officer from a hazy border or them not having notice of what's unreasonable or unlawful. And although I agree it's not a constitutional basis, their own policy does put them on notice that such conduct is unacceptable for a police officer. You don't seem to emphasize very much Rule 50. I was going to get to that, Your Honor. You mentioned it at the very beginning, but you didn't talk about it. I did. How do you get to a judgment as a matter of law afterward that relies not only on qualified immunity, but on the sufficiency of the evidence if you haven't made a 50-80 decision? Your Honor, I agree with you 100%. And when they filed their judgment as a matter of law, I filed the response to that, and that was the first thing I said to the judge. I told the district court, it's my belief, based on 50-A, that a proper motion was not before you, and therefore you can't even entertain this Rule 50-B motion. But the district court disagreed with me. But that motion was made by you. I'm sorry, Your Honor? You made a motion or an objection. I made the objection, and we actually, in fact, when qualified immunity was discussed during the jury instructions, we told the court at that point it would be an unfair prejudice to us at this point if they're going to assert mistake as there's been no evidence and we should be able to cure that. If they're going to say now that this could have possibly been a mistake, we should be entitled to ask the officers if this was a mistake since they've been saying the whole time that it never even happened. Remind me of something. If I remember the Unitherm case in the Supreme Court and the NITCO case before our court correctly, what they establish is that unless the motion is made twice, then there's a procedural default, barring the party that failed to make the motion, and there's a procedural default. And if the motion is made twice, then there's a procedural default, barring the party that failed to make the motion from appealing the court's failure to grant a judgment as a matter of law. It seems very clear that that's so, but it seems like you need an extension to it because Engle's the one that failed to make the motion twice, and Engle's not appealing. Engle's perfectly happy that the judge let him off. It's Tortu that's appealing. So how does Engle's procedural default help Tortu? Well, it helps us that if the district court agreed with us that it was procedurally barred, we wouldn't even be in the position right now to be in front of you. So what you're saying is that the district court erred by not treating it as procedurally barred at that time. Absolutely, and that was why we initially, that was our first response to when they filed their judgment as a matter of law, and then obviously covered ourselves with if the court was going to entertain it and why it was incorrect on those grounds. Now, this motion was brought in a 50-50 fashion. However, there are other motions for new trial, correct? Correct. And so if the court even made an error as to allowing a 50 motion, any kind of a 50 motion, is it an error for the court to have construed the motion for new trial under another rule? I believe the court could grant the new trial under Rule 59, certainly. And that would still be abuse of discretion? That would be an abuse of discretion standard. Thank you.
judges: Hug, Kleinfeld, Smith